CHAMPION MORTGAGE , 2 GATEHALL DRIVE, PARSIPPANY, NJ 07054

| EXHIBIT A | Redacted | ORIGINAL |
|---|---|---|

## PENNSYLVANIA FIXED RATE PAYMENT MORTGAGE NOTE – FIRST LIEN

NOVEMBER 06, 2001                                          PHILADELPHIA, PENNSYLVANIA

7254 NORTH 21ST STREET, CITY OF PHILADELPHIA, PENNSYLVANIA

### 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $64,000.00 (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is **CHAMPION MORTGAGE , A DIVISION OF KEY BANK, USA, NATIONAL ASSOCIATION.** I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

### 2.    INTEREST

I agree to pay interest at a yearly rate of 7.875% computed on the basis that a year consists of twelve (12) months, each containing thirty (30) days. Interest will be charged on the unpaid principal until the full amount of principal is repaid. The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 4(B) of this Note.

### 3.    PAYMENTS

I will pay principal and interest by making payments every month. Each of my monthly payments will be in the amount of U.S. $530.35.

I will make my monthly payments on the 13TH day of each month beginning on DECEMBER 13, 2001. I will make these payments every month until NOVEMBER 13, 2021, on which date I will pay in full all the remaining principal and all accrued interest and any other charges that I may owe under this Note or any mortgage securing this Note.

Each regularly scheduled payment I make will be applied first to accrued and unpaid interest, then to the outstanding principal balance and then to any other charges due under this Note or under any mortgage securing this Note. I understand and agree that interest will accrue, be computed and be collected for the period from one scheduled payment due date to the next, on the assumption that each such payment period consists of thirty (30) days, regardless of the date on which my payment is actually received. I understand that if you receive a payment after its due date and any applicable grace period, I will owe a late charge under paragraph 4(A) of this Note.

I will make my monthly payments at **2 GATEHALL DRIVE, PARSIPPANY, NJ 07054** or at a different place if required by the Note Holder.

### 4.    BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A)    Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN (15) calendar days after the date is due, I will pay a late charge to the Note Holder. The amount of the late charge will be THE LESSER OF $50.00 OR FIVE percent (5%) of my overdue payment. I will pay this late charge promptly but only once on each late payment.

#### (B)    Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. I will also be in default if I fail to keep any of my promises made in my Mortgage executed this date in favor of Lender. If I am in default, the Note Holder may require me to pay immediately the full amount of the principal, which has not been paid, all the interest that I owe on that amount and all other outstanding charges.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

RedactedRedacted

**(C)    Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for its reasonable and bona fide costs and expenses paid to third parties as provided in the Mortgage, but only to the extent not prohibited by applicable law.

**(D)    Dishonored Check Charge**

I will pay a dishonored check charge of $20.00 to the Note Holder for each check or other instrument, or payment order, given in payment under this Note which is returned to the Note Holder unpaid.

**5.    THIS NOTE SECURED BY A MORTGAGE**

In addition to the protection given to the Note Holder under this Note, a Mortgage, dated the date of this Note, protects the Note Holder from possible losses, which might result if I do not keep the promises which I make in this Note. That Mortgage describes how and under what additional conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

**6.    BORROWER'S RIGHT TO MAKE PREPAYMENTS**

**(A)**    I have the right to make extra or additional payments of principal under this Note at any time, without penalty. An extra or additional payment of principal is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

**(B)**    I agree that the Note Holder will apply any prepayment to reduce the principal. If I make a prepayment of less than the outstanding principal balance plus accrued interest and other charges due, there will be no changes in the amounts of, or changes or delays in the due dates of, my scheduled monthly payments unless the Note Holder agrees in writing to such changes.

**7.    BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first-class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first-class mail to the Note Holder at the address stated in Section 3 above or at a different address if I am given a notice of that different address.

**9.    RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

**10.    LOAN CHARGES**

If a law or regulation which applies to this loan is finally interpreted so that the interest, any other charges, the method of calculating any interest or other charges, or any other provision of this Note exceeds permitted limits or conflicts with the requirements of such law or regulation, then any such interest or charge shall be limited to that permitted and any sums already collected which exceed such limits shall be refunded to me. To that end, I agree that the provisions of this Note are severable and all provisions in this Note not in conflict with such interpretation, law, or regulation shall remain in full force and effect. Any refund hereunder, at Note Holder's option, may be made by a credit to the principal balance or direct payment to me.

RedactedRedacted

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

JAMAR HENDERSON

Witness:

—WITNESS

PAY TO THE ORDER OF_____

—————— WITHOUT RECOURSE —————
BY: CHAMPION MORTGAGE, A DIVISION OF KEY BANK USA, N.A.

————————————————————
KAREN MARCANO
MANAGER, POST CLOSING/COLLATERAL

CitiMortgage, Inc

PAY TO THE ORDER OF_____

—————— WITHOUT RECOURSE —————
BY: CHAMPION MORTGAGE, A DIVISION OF KEY BANK USA, N.A.

————————————————————
KAREN MARCANO
MANAGER, POST CLOSING/COLLATERAL

Redacted

CHAMPION MORTGAGE , 2 GATEHALL DRIVE, PARSIPPANY, NJ 07054

RedactedRedacted

## PENNSYLVANIA RIDER TO MORTGAGE NOTE – FIRST OR SECOND LIEN

**Date of Note:** NOVEMBER 06, 2001

**Borrower(s) Name(s)**
JAMAR HENDERSON

**Secured Property Address:**
7254 NORTH 21ST STREET
CITY OF PHILADELPHIA, PENNSYLVANIA

**Loan Amount:** $64,000.00

In the event Lender has not received (at the previously designated funding location or the Lender's corporate headquarters) and approved all of the documents and/or information which it requires to fund the above mentioned loan on NOVEMBER 13, 2001, then this loan may be cancelled or funded at a later date, at the sole option of the Lender. If the Lender chooses to fund this loan at a date subsequent to NOVEMBER 13, 2001 then, regardless of what appears elsewhere in the loan documents, the first payment will be due one month after the loan is funded. Future payment will be due on the same day of each month as the first payment. Interest will be charged to the Borrower(s) beginning on the date money is disbursed by the Lender. The maturity date will be extended and will be 240 months from the date of funding the loan.

All other terms, as evidenced in the Mortgage Note, Security Instrument and other loan documents, remain the same.

### ACKNOWLEDGMENT

I/We the applicant(s) have read and understand the contents of this Rider to Mortgage Note and agree to its terms and conditions by signing and dating below.

Date: 11/6/01

JAMAR HENDERSON

Witness:

WITNESS

RedactedRedacted

# NOTE ALLONGE     <span style="color:red">ORIGINAL</span>

**Statement of Purpose:** This Note Allonge is attached to and made part of the Note, for the purpose of Noteholder Endorsements to evidence transfer of interest.

**Loan Number:** Redacted

**Loan Date:** __11/6/2001__   **Original Loan Amount: $   64,000.00**

**Originator: CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NATIONAL ASSOCIATION**
**Original Mortgagor:  JAMAR HENDERSON**
**Property Address: 7254 NORTH 21ST STREET, CITY OF PHILADELPHIA, PA 19138**

Pay to The Order of
_____Bayview Loan Servicing, LLC___
Without Recourse

Redacted

CITIMORTGAGE, INC.

By: _____

M. Arndt, Vice President



ALLONGE TO NOTE          

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW:

BORROWER: JAMAR HENDERSON

ORIGINAL PRINCIPAL BALANCE: $64,000.00

PROPERTY ADDRESS: 7254 N 21ST ST, PHILADELPHIA, PA 19138

PAY TO THE ORDER OF:
**MAC Capital Group, LLC dba Granite Loan Solutions**

WITHOUT RECOURSE
**BAYVIEW LOAN SERVICING, LLC**

BY

NAME: DAVID BRIGGS
TITLE: First Vice President



**ALLONGE TO NOTE**          ORIGINAL

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW:

BORROWER: JAMAR  HENDERSON

ORIGINAL PRINCIPAL BALANCE:  $64,000.00

PROPERTY ADDRESS: 7254 NORTH 21ST  STREET, PHILADELPHIA, PA 19138

NOTE DATE: NOVEMBER 06, 2001

PAY TO THE ORDER OF:
**Kirkland Financial LLC**

WITHOUT RECOURSE
**MAC Capital Group, LLC dba Granite Loan Solutions**

BY: _____

NAME: Jeffrey Merrick
TITLE:  Manager

# ALLONGE TO NOTE



**ORIGINAL**

Note Date: November 6, 2001

Loan Amount: $64,000.00

Interest Rate:  7.875%

Borrower: Jamar Henderson

Property: 7254 North 21st Street, Philadelphia, Pennsylvania19138

Pay to the Order of

National Investors Group LLC

Without Recourse

**Kirkland Financial LLC**

**Mark A. Davis, Vice President**

# NOTE ALLONGE

ORIGINAL

"PAY TO THE ORDER OF

_____ "

**NATIONAL INVESTORS GROUP, LLC**

BY: _____

**JACK J. MENDHEIM, MEMBER/MANAGER**

Philadelphia Department of Records *HENDERSON*

## RECORDING INFORMATION SUMMARY (RIS)

The information provided by you will be relied upon by the Department of Records for examination and indexing purposes. If there is any conflict between the RIS and the attached document, the information on the RIS shall prevail for examination and indexing purposes.

**EXHIBIT B**

**RETURN DOCUMENT TO:**
Name: **Professional Abstract & Assurance Corp.**
Address: **1608 Walnut Street**
**Philadelphia, PA**

Telephone: **215-355-0115**

---

**1. Type of Document:**

| | | | | | |
|---|---|---|---|---|---|
| ☐ Deed | | ☒ Mortgage | | ☐ Lease/Memorandum of Lease | |
| ☐ Sheriff's Deed | | ☐ Release of Mortgage | | ☐ Assignment of Lease & Rent | |
| ☐ Deed of Condemnation | | ☐ Assignment of Mortgage | | ☐ Easement | |
| ☐ Other Deed | | ☐ Satisfaction of Mortgage | | ☐ Other: _____ (specify) | |

**2. Date of Document:** 11 / 6 / 01
month / day / year

**3. Grantor/Mortgagor/Assignor/Lessor/Other:** (a.) **HENDERSON, JAMAR**
*(Last Name, First Name, Middle Initial)* (b.) _____
☐ Additional names on **Continuation Page** of RIS.

**4. Grantee/Mortgagee/Assignee/Lessee/Other:** (a.) **CHAMPION MORTGAGE**
*(Last Name, First Name, Middle Initial)* (b.) _____
☐ Additional names on **Continuation Page** of RIS.

**5. Property Address:**

(a.) House No. & Street Name: **7254 NORTH 21ST STREET**
Condo Name (if applicable): _____ Unit # _____ Philadelphia, PA Zip Code: **19138**
BRT Account # (optional): _____ Parcel Identification Number (PIN) (optional): **97N1-131**
☐ Additional addresses on **Continuation Page** of RIS.

**6. Grantee's Mailing Address (Deeds only):**
(If Grantee is at a different address than the Property Address listed in Section 5, complete this section.)
Grantee or Designee Name: _____
House No. & Street Name: _____
City: _____ State: _____ Zip Code: _____

**7. Recording Information to be Referenced. Mortgage to be released/satisfied/assigned/modified:**

(a.) Name of Original Mortgagee: _____
Recording Date of Original Mortgage: _____ / _____ / _____
month / day / year
☐ Additional references on **Continuation Page** of RIS.

Recorder's Index Information of Original Mortgage
Initials, Book and Page or Doc. ID#

**8. Optional Information:** ☐ Consolidation ☐ Subdivision

---

**DEBBI DAVIS**
Preparer Name

Redacted Redacted
Preparer Telephone Number

*Debbi Davis*
Preparer Signature

82-337

50360959
Pg: 1 of 12
11/21/2001 04:13PM

This Document Recorded
11/21/2001
04:13PM
Doc Code: M    Commissioner of Records, City of Philadelphia
Doc Id: 50360959
Receipt #: 127855
Rec Fee: 43.50

Redacted

_____ [Space Above This Line for Recording Data] _____

RedactedRedactedRedacted

### PENNSYLVANIA FIXED RATE PAYMENT MORTGAGE – FIRST LIEN

**THIS MORTGAGE** ("Security Instrument") is given on NOVEMBER 06, 2001. The mortgagor is JAMAR HENDERSON   ("Borrower"), whose address is 7254 N 21ST STREET , PHILADELPHIA, PA 19138. This Security Instrument is given to **CHAMPION MORTGAGE , A DIVISION OF KEY BANK, USA, NATIONAL ASSOCIATION,** ("Lender") a national bank organized and existing under the laws of the United States, and whose address is **2 GATEHALL DRIVE, PARSIPPANY, NJ 07054.** Borrower owes Lender the principal sum of U.S. SIXTY  FOUR  THOUSAND AND 00/100 Dollars (U.S. $64,000.00). This debt is evidenced by the Borrower's Note ("Note") dated the same date as this Security Instrument, which provides for monthly payments, with the full debt, if not paid earlier, due and payable on NOVEMBER 13, 2021.

This Security Instrument secures to Lender:  (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and Note.  For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in PHILADELPHIA County, Commonwealth of Pennsylvania:

### - See Schedule A Attached Hereto and Made a Part Hereof -

Tax Parcel # 97N1-131

which has the address of 7254 NORTH 21ST STREET, CITY OF PHILADELPHIA, PENNSYLVANIA, ("Property Address");

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

**BORROWER COVENANTS** that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

RedactedRedacted



50360959
Pg: 2 of 12
11/21/2001 04:13PM

Borrower and Lender Covenant and agree as follows:

## 1.    Payment of Principal and Interest; Prepayment and Late Charges; Dishonored Check Charge

Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note. If Borrower makes a payment by check, draft or money order and such check, draft or money order is dishonored on the second presentment, Borrower shall pay a dishonored check charge of $20.00.

## 2.    Funds for Taxes and Insurance

Subject to applicable law, upon written notice from Lender requiring that Borrower escrow funds for the payments of taxes and insurance on the Property, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this security instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items". Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S. C. § 2601 et seq ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays to Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one (1) time charge for an independent real estate tax reporting service used by Lender in connection with the loan, evidenced by the Note, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held under applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing and, in such case, Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve (12) monthly payments, at Lender's sole discretion. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 19,

RedactedRedacted



Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3.      Application of Payments**

Unless applicable law provides otherwise, all payments received by Lender under paragraph 1 shall be applied in accordance with the terms of the Note.

**4.      Charges; Liens**

Borrower shall pay or cause to be paid, when due, all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien that may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

**5.      Hazard or Property Insurance**

Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender or applicable law requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender, or applicable law requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7. Any insurance Lender obtains may, but need not, protect the interests of Borrower and may not pay any claim made by or against Borrower. In addition, insurance coverage that Lender obtains hereunder may be significantly more expensive than similar coverage Borrower could obtain for himself or herself. All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower

RedactedRedactedRedacted



otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.

If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender, may collect the insurance proceeds. Lender may use the proceeds received by Lender to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If, under paragraph 19, the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

## 6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds

Unless Borrower's loan application and the Lender's loan approval provided that the Property was not required to be occupied as Borrower's principal residence, Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty (60) days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing which consent shall not be unreasonable withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.

Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

## 7. Protection of Lender's Rights in the Property

If Borrower fails to perform the covenants and agreements contained in this Security Instrument or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate for condemnation, or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. **Lender's actions may include paying any sums secured by a lien which** has priority over

RedactedRedactedRedacted



this Security Instrument, paying real estate taxes, flood insurance and mortgage insurance premiums, appearing in court, paying reasonable attorney fees, entering on the Property to make repairs, and paying property insurance premiums.

Although Lender may take action under this paragraph 7, Lender does not have to do so. Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument, as allowed by applicable law. Unless Borrower and Lender agree to other terms of payment, as allowed by law, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

## 8.    Mortgage Insurance

If Lender required mortgage insurance as a condition of making the loan evidenced by the Note and secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender.

If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement of mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

## 9.    Inspection

Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

## 10.    Condemnation

The proceeds of any award or.claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or any part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Unless Lender and Borrower otherwise agree in writing, any application of such proceeds which does not pay the sums secured by this Security Instrument in full, shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.



**11.    Borrower Not Released; Forbearance by Lender Not a Waiver**

Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any other right or remedy at that time, or of the same or any other right or remedy at any other time.

**12.    Successors and Assigns Bound; Joint and Several Liability; Co-Signers**

The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 19(B). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.    Loan Charges**

If the loan secured by this Security Instrument is subject to a law or regulation which sets maximum loan charges, and that law or regulation is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceed permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14.    Notices**

Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first-class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first-class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.



50360959
Pg: 7 of 12
11/21/2001 04:13PM

**15.    Governing Law; Severability**

This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16.    Borrower's Copy**

Borrower acknowledges receipt of a conformed copy or a photocopy of the Note and of this Security Instrument.

**17.    Sale of Note; Change of Loan Servicer**

The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**18.    Hazardous Substances**

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 18, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances; gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 18, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

RedactedRedacted



50360959
Pg: 8 of 12
11/21/2001 04:13PM

**19.    Lender's Rights if Borrower Fails to Keep Promises**

If any of the events or conditions described in subparagraphs (A), (B), or (C) of this paragraph 19 shall occur, then (i) if the original principal amount of the Note exceeds $50,000.00, Lender may require that Borrower pay immediately the entire amount remaining unpaid under the Note and this Security Instrument (this requirement will be called "Immediate Payment in Full"); or (ii) if the original principal amount of the Note is $50,000.00 or less, Lender, after giving Borrower timely notice of Borrower's rights to cure as is then required by applicable law and Borrower's failure to cure within the time period set forth in such notice, may require Borrower to make Immediate Payment in Full.

If Lender requires Immediate Payment in Full, Lender may, without further demand, foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred pursuing the remedies provided in this paragraph 19 including, but not limited to, attorney fees and cost of title evidence to the extent permitted by applicable law.

Subject to the applicable notice and cure provisions, if any, set forth above in this paragraph 19, Lender may require Immediate Payment in Full under this paragraph 19 if:

**(A)**    Borrower is in default under the terms of the Note; or

**(B)**    All or any part of the Property, or any interest in the Property is sold or transferred (or, if Borrower is not a natural person, if a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent; or

**(C)**    Borrower fails to keep any other promise or agreement in this Security Instrument within the time set forth, or if no time is set forth in this Security Instrument, then within the time set forth in the notice sent to Borrower by Lender, or if Borrower is otherwise in default under this Security Instrument, or if any of the covenants, representations and/or warranties made by Borrower in this Security Instrument are not true and correct in any material respect or are otherwise breached by Borrower.

**20.    Release**

Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**21.    Waivers**

Borrower, to the extent permitted by applicable law, waives and releases any errors or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.



RedactedRedactedRedacted

50360959
Pg: 9 of 12
11/21/2001 04:13PM

**22.    Reinstatement**

Borrower's time to reinstate, to the extent, if any, provided in paragraph 19, shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**23.    Purchase Money Mortgage**

If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**24.    Interest Rate After Judgment**

Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**25.    Riders to this Security Instrument**

If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

**IN WITNESS WHEREOF,** Borrower has signed and sealed this Security Instrument.

JAMAR HENDERSON

Witness: _____
WITNESS

I hereby certify that the precise address of the Lender (Mortgagee) is **2 GATEHALL DRIVE, PARSIPPANY, NJ 07054.**



## SCHEDULE "A"

ALL THE FOLLOWING described real estate, Situate in the 50th Ward of the City of Philadelphia, County of Philadelphia and Commonwealth of Pennsylvania, as follows, to wit:

SITUATE on the Westerly side of 21st Street at the distance of one hundred twenty-five feet four inchesSouthwardly from the Southerly side of 73rd Avenue North (sixty feet wide) in the 50th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said 21st Street, fifteen feet four inches and extending of that width in length or depth Westwardly between line parallel with said 73rd Avenue North, one hundred eighteen feet to the middle line of a certain driveway sixteen feet wide, which leads Northwardly and Southwardly parallel with said 21st Street into and from 73rd Avenue North.

BEING Known as 7254 N. 21st Street.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveway as and for a driveway, passageway and watercourse at all times hereafter, forever, in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

UNDER AND SUBJECT to certain restrictions as of record.

#97 N1 - 131



On Behalf of the Lender:

By: _____

Title _____


**COMMONWEALTH OF PENNSYLVANIA:)**

                                     ss:

**COUNTY OF PHILADELPHIA**      )

        On this 6TH day of NOVEMBER, 2001, before me _Debra M. Davis_ , the
undersigned _____ officer, personally appeared JAMAR HENDERSON  known to me
(or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged that he/she/they executed the same for the purposes therein contained.

        **IN WITNESS WHEREOF,** I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: _____


> NOTARIAL SEAL
> DEBRA M. DAVIS, Notary Public
> Lower Southampton Twp., Bucks County
> My Commission Expires March 31, 2003


50360959
Pg: 12 of 12
11/21/2001 04:13PM



RedactedRedactedRedacted

The information provided by you will be relied upon by the Department of Records for examination and indexing purposes. If there is any conflict between the RIS and the attached document, the information on the RIS shall prevail for examination and indexing purposes.

**RETURN DOCUMENT TO:**

| | |
|---|---|
| Name: | S. A. Wileman |
| Address: | Orion Financial Group, Inc. |
| | 2860 Exchange Blvd. # 100 |
| | Southlake, TX 76092 |
| Telephone: | (888) 316-7466 |

---

**1. Type of Document:**

| | | |
|---|---|---|
| ☐ Deed | ☐ Mortgage | ☐ Lease/Memorandum of Lease |
| ☐ Sheriff's Deed | ☐ Release of Mortgage | ☐ Assignment of Lease & Rent |
| ☐ Deed of Condemnation | ☒ Assignment of Mortgage | ☐ Easement |
| ☐ Other Deed | ☐ Satisfaction of Mortgage | ☐ Other |
| | | (specify) |

**2. Date of Document:** 1/27/2003

**3.** Grantor/Mortgagor/Assignor/Lessor/ Other:
(Last Name, First Name, Middle Initial)
(a.) CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NATIONAL ASSOCIATION
(b.)
☐ Additional names on **Continuation Page** of RIS

**4.** Grantee/Mortgagee/Assignee/Lessee/ Other:
(Last Name, First Name, Middle Initial)
(a.) CITIFINANCIAL MORTGAGE COMPANY, INC.
(b.)
☐ Additional names on **Continuation Page** of RIS

**5.** Property Address:

(a.) House No. & Street Name: Property Address: 7254 NORTH 21ST STREET, PHILADELPHIA, PA

Condo Name(if applicable): _____ Unit # _____ Philadelphia, PA

BRT Account # (optional): _____ Parcel Identification Number (PIN) (optional): _____

☐ Additional addresses on **Continuation Page** of RIS

**6.** Grantee's Mailing Address (Deed Only):
(If Grantee is at a different address than the Property Address listed in Section 5, complete this section.)

Grantee or Designee Name:

House No. & Street Name:

**7.** Recording Information to be Referenced. Mortgage to be released/satisfied/assigned/modified:

(a.) Name of Original Mortgagee: CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NATIONAL ASSOCIATION

Recording Date of Original Mortgage: 11/21/2001

Recorder's Index Information of Original Mortgage:

Instrument 50360959

Initials, Book and Page or Doc. ID#

☐ Additional references on **Continuation Page** of RIS

**8.** **Optional Information**

☐ Consolidation          ☐ Subdivision

---

CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NATIONAL ASSOCIATION

'OR Name

(888) 316-7466

'OR Telephone Number

*[signature]*

'OR Signature

| FOR DEPT USE ONLY |
|---|

50616076
Pg 1 of 3
02 8 2003 08 129M

This Document Recorded
02/19/2003
08:129X
Doc Code  A

Doc Id  50616076
Receipt # 218973
Rec Fee 43.50
Commissioner of Records  City of Philadelphia

2

From: CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NATIONAL ASSOCIATION
To:    CITIFINANCIAL MORTGAGE COMPANY, INC.

RETURN TO:
S. A. Wileman
Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092          **Assignment of Mortgage**          Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NATIONAL ASSOCIATION  2 Gatehall Drive, Parsippany, NJ 07054 (Assignor)** by these presents does assign, and set over, without recourse, to **CITIFINANCIAL MORTGAGE COMPANY, INC.  1111 Northpoint Drive, Bldg. 4, Suite 100, Coppell, TX 75019 (Assignee)** the described mortgage, together with certain note(s) described with all interest, all liens, any rights due or to become due thereon, executed by JAMAR HENDERSON to CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NATIONAL ASSOCIATION.  Said mortgage **Dated: 11/6/2001 is recorded in the State of PA, County of Philadelphia on 11/21/2001, as Instrument 50360959 AMOUNT: $ 64,000.00  SEE ATTACHED EXHIBIT A**
NO ASSIGNMENTS OF RECORD

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer who was duly authorized by a resolution of its board of directors.   Dated: January 27, 2003
CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NATIONAL ASSOCIATION

By: 

Redacted

A. Tucker, Authorized Signator

State of Texas, County of Tarrant
On 1/27/2003, before me, the undersigned, personally appeared A. Tucker, who acknowledged that he/she is Authorized Signator of/for CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NATIONAL ASSOCIATION  and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NATIONAL ASSOCIATION .

W. KRITZER
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Expires 7-26-2006

Notary public, W. Kritzer
My commission expires: July 26, 2006

50616076
Page: 2 of 3
02/18/2003 08:12A

PA   Philadelphia

Redacted

<u>The Assignee hereby certifies that the precise residence is</u>
<u>1111 Northpoint Drive, Bldg. 4, Suite 100, Coppell, TX 75019.</u>

# Exhibit A

ALL THE FOLLOWING DESCRIBED REAL ESTATE, SITUATE IN THE
50TH WARD OF THE CITY OF PHILADELPHIA, COUNTY OF
PHILADELPHIA AND COMMONWEALTH OF PENNSYLVANIA, AS FOLLOWS,
TO WIT:

SITUATE ON THE WESTERLY SIDE OF 21ST STREET AT THE DISTANCE
OF ONE HUNDRED TWENTY-FIVE FEET FOUR INCHES SOUTHWARDLY
FROM THE SOUTHERLY SIDE OF 73RD AVENUE NORTH (SIXTY FEET
WIDE) IN THE 50TH WARD OF THE CITY OF PHILADELPHIA.
CONTAINING IN FRONT OR BREADTH ON THE SAID 21ST STREET,
FIFTEEN FEET FOUR INCHES AND EXTENDING OF THAT WIDTH IN
LENGTH OR DEPTH WESTWARDLY BETWEEN LINE PARALLEL WITH SAID
73RD AVENUE NORTH, ONE HUNDRED EIGHTEEN FEET TO THE MIDDLE
LINE OF A CERTAIN DRIVEWAY SIXTEEN FEET WIDE, WHICH LEADS
NORTHWARDLY AND SOUTHWARDLY PARALLEL WITH SAID 21ST STREET
INTO AND FROM 73RD AVENUE NORTH.

BEING KNOWN AS 7254 N. 21ST STREET.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY, AND
PRIVILEGE OF THE AFORESAID DRIVEWAY AS AND FOR A DRIVEWAY,
PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER, FOREVER,
IN COMMON WITH THE OWNERS, TENANTS AND OCCUPIERS OF THE
OTHER LOTS OF GROUND BOUNDING THEREON AND ENTITLED TO THE
USE THEREOF.

UNDER AND SUBJECT TO CERTAIN RESTRICTIONS OF RECORD.
97N1-131



Redacted

Philadelphia County,   PA

CITI-W/CHAMP/CFM

52538338

This Document Recorded
09/24/2012
01:50PM
Doc Code  A      Commissioner of Records. City of Philadelphia

Doc Id  52538338
Receipt #  1158966
Rec Fee  198.00

RETURN TO: 

ATAPOL, INC
24 WOODVILLE AVENUE
PITTSBURGH, PA 15220

M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092

CESSOR BY REASON OF MERGER TO CITIFINANCIAL MORTGAGE COMPANY, INC.

To: BAYVIEW LOAN SERVICING, LLC

### Assignment of Mortgage

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **CITIMORTGAGE, INC. SUCCESSOR BY REASON OF MERGER TO CITIFINANCIAL MORTGAGE COMPANY, INC.    4050 REGENT BLVD, MS N2A-222, IRVING, TX 75063 (Assignor)** by these presents does assign, and set over, without recourse, to **BAYVIEW LOAN SERVICING, LLC  4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, FL 33146 (Assignee)** the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by **JAMAR HENDERSON** to CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NATIONAL ASSOCIATION.    Said mortgage **Dated: 11/6/2001** is recorded in the State of PA, County of Philadelphia on **11/21/2001, as Instrument 50360959 AMOUNT: $ 64,000.00**  SEE ATTACHED EXHIBIT A
  Property Address: 7254 NORTH 21ST STREET, PHILADELPHIA, PA 19138

IN WITNESS WHEREOF, the undersigned corporation/trust has caused this instrument to be executed by its proper officer. Executed on: July 31, 2012
CITIMORTGAGE, INC. SUCCESSOR BY REASON OF MERGER TO CITIFINANCIAL MORTGAGE COMPANY, INC.

By

M. E. Wileman, Vice President

Redacted

PA  Philadelphia

Redacted

State of Texas, County of Tarrant

On 07/31/2012, before me, the undersigned, personally appeared M. E. Wileman, who acknowledged that he/she is Vice President of/for  CITIMORTGAGE, INC. SUCCESSOR BY REASON OF MERGER TO CITIFINANCIAL MORTGAGE COMPANY, INC.  and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of CITIMORTGAGE, INC. SUCCESSOR BY REASON OF MERGER TO CITIFINANCIAL MORTGAGE COMPANY, INC. .



Notary public, Kimberly Jean Starkey
My commission expires: October 13, 2015

The Assignee hereby certifies that the precise address of the within named BAYVIEW LOAN SERVICING, LLC is 4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, FL 33146.



PA  Philadelphia



# Exhibit A

ALL THE FOLLOWING DESCRIBED REAL ESTATE, SITUATE IN THE
50TH WARD OF THE CITY OF PHILADELPHIA, COUNTY OF
PHILADELPHIA AND COMMONWEALTH OF PENNSYLVANIA, AS FOLLOWS,
TO WIT:

SITUATE ON THE WESTERLY SIDE OF 21ST STREET AT THE DISTANCE
OF ONE HUNDRED TWENTY-FIVE FEET FOUR INCHES SOUTHWARDLY
FROM THE SOUTHERLY SIDE OF 73RD AVENUE NORTH (SIXTY FEET
WIDE) IN THE 50TH WARD OF THE CITY OF PHILADELPHIA.
CONTAINING IN FRONT OR BREADTH ON THE SAID 21ST STREET,
FIFTEEN FEET FOUR INCHES AND EXTENDING OF THAT WIDTH IN
LENGTH OR DEPTH WESTWARDLY BETWEEN LINE PARALLEL WITH SAID
73RD AVENUE NORTH, ONE HUNDRED EIGHTEEN FEET TO THE MIDDLE
LINE OF A CERTAIN DRIVEWAY SIXTEEN FEET WIDE, WHICH LEADS
NORTHWARDLY AND SOUTHWARDLY PARALLEL WITH SAID 21ST STREET
INTO AND FROM 73RD AVENUE NORTH.

BEING KNOWN AS 7254 N. 21ST STREET.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY, AND
PRIVILEGE OF THE AFORESAID DRIVEWAY AS AND FOR A DRIVEWAY,
PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER, FOREVER,
IN COMMON WITH THE OWNERS, TENANTS AND OCCUPIERS OF THE
OTHER LOTS OF GROUND BOUNDING THEREON AND ENTITLED TO THE
USE THEREOF.

UNDER AND SUBJECT TO CERTAIN RESTRICTIONS OF RECORD.

97N1-131

Redacted                    RedactedRedacted
                Philadelphia County,  PA

eRecorded in Philadelphia PA   Doc Id: 52800045
07/02/2014 06:34PM      Receipt#: 1380187
Page 1 of 3            Rec Fee: $203.00
Commissioner of Records   Doc Code: A
State RTT:    Local RTT:

Record & Return To and Prepared By:

**Redacted**

_____[Space Above This Line For Recording Data]___         _____

## ASSIGNMENT OF MORTGAGE

Made this day of:

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned **BAYVIEW LOAN SERVICING, LLC,** whose address is 4425 Ponce De Leon Boulevard, Coral Gables, Florida 33146, herein ("Assignor") its successors and assigns, hereby assign, and transfer to **MAC CAPITAL GROUP, LLC D/B/A GRANITE LOAN SOLUTIONS,** whose address is 18201 Von Karman Avenue, Suite 450, Irvine, CA 92612, herein (" Assignee") its successors and assigns, all its right, title and interest in and to a certain Mortgage recorded in the County of Philadelphia, State of **PENNSYLVANIA,** referenced below:

**Original Mortgagor(s): JAMAR HENDERSON**
**Original Mortgagee: Champion Mortgage, a division of Key Bank, USA, National Association**
**Date of Mortgage: 11/6/2001 recorded on 11/21/2001 in Book:  Page:**
**Instrument/Document: 50360959**
**Original Mortgage Debt: $64,000.00**
**Commonly Known as: 7254 NORTH 21st STREET, PHILADELPHIA, PA 19138**
**Parcel Tax ID: 97N1-131          Township: City of PHILADELPHIA**
Legal description is attached hereto and made a part thereof

**PRIOR RECORDED ASSIGNMENT:** CitiMortgage, Inc., successor by reason of merger to CitiFinancial Mortgage Company, Inc., to Bayview Loan Servicing, LLC recorded on 05/24/2012 as Instrument Number 52538338

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the document above-described.

**I hereby certify that the precise address of the within named Assignee is 18201 Von Karman Avenue. Suite 450, Irvine, CA 92616 By:** _____ .

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective
_8/28/2012_ .

**BAYVIEW LOAN SERVICING, LLC**

By _____

Name: David Briggs
Title: First Vice President

State of _FLORIDA_
County _MIAMI-DADE_

On _8/28/13_ , before me, **Rogelio A. Portal**, Notary Public, personally appeared, David Briggs, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me and that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify that under penalty of perjury under laws of the State of _FLORIDD_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____    **Rogelio A. Portal**
Notary Public: _____
My Commission Expires: _____

ROGELIO A. PORTAL
Notary Public - State of Florida
My Comm. Expires Aug 25, 2016
Commission # EE 197169

# SCHEDULE "A"

ALL THE FOLLOWING described real estate. Situate in the 50th Ward of the City of Philadelphia, County of Philadelphia and Commonwealth of Pennsylvania, as follows, to wit:

SITUATE on the Westerly side of 21st Street at the distance of one hundred twenty-five feet four inchesSouthwardly from t Southerly side of 73rd Avenue North (sixty feet wide) in the 50th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said 21st Street, fifteen feet four inches and extending of that width in length or depth Westwardly between line parallel with said 73rd Avenue North, one hundred eighteen feet to the middle line of a cert driveway sixteen feet wide, which leads Northwardly and Southwardly parallel with said 21st Street into and from 73rd Avenue North.

BEING Known as 7254 N. 21st Street.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveway as and for a driveway, passageway and watercourse at all times hereafter, forever, in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

UNDER AND SUBJECT to certain restrictions as of record.

#97 N1 - 131

eRecorded in Philadelphia PA  Doc Id: 52800046
07/02/2014 06:34PM      Receipt#: 1380187
Page 1 of 3            Rec Fee: $203.00
Commissioner of Records    Doc Code: A
State RTT:    Local RTT:

Prepared By:

Duy Ho
Granite Loan Solutions
18201 Von Karman Ave, Suite 450
Irvine, CA 92612

**Redacted**

_____ [Space Above This Line For Recording Data] _____

### ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned, **MAC Capital Group, LLC dba Granite Loan Solutions**, whose address is 18201 Von Karman Avenue, Suite 450, Irvine, CA 92612, herein ("Assignor") its successors and assigns, hereby assign, and transfer to **Kirkland Financial LLC**, whose address is 3000 Business Park Circle, Suite 500, Goodlettsville, TN 37070, herein (" Assignee") its successors and assigns, all its right, title and interest in and to a certain Mortgage recorded in the County of **Philadelphia**, State of **Pennsylvania**, referenced below:

Original Mortgagor(s): **JAMAR HENDERSON**
Original Mortgagee: **Champion Mortgage, a division of Key Bank, USA, National Association**
Date of Mortgage: **11/6/2001 recorded on 11/21/2001 in Book: Page:**
Instrument/Document: 50360959
Original Mortgage Debt: $64,000.00
Commonly Known as: 7254 **NORTH 21st STREET, PHILADELPHIA, PA 19138**
Parcel Tax ID: 101187900
Legal description is attached hereto and made a part thereof

**PRIOR RECORDED ASSIGNMENT: CitiMortgage, Inc., successor by reason of merger to CitiFinancial Mortgage Company, Inc., to Bayview Loan Servicing, LLC recorded on 05/24/2012 as Instrument Number 52538338**

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the document above-described.

**I hereby certify that the precise address of the within named Assignee is 3000 Business Park Circle, Suite 500, Goodlettsville, TN 37070. By:** _____.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective 10/31/2013.

MAC Capital Group, LLC dba Granite Loan Solutions

By: _____

Name: Jeffrey Merrick
Title: Manager

State of California
County of Orange

On October 31, 2013, before me, Claudia Newcomer, Notary Public, personally appeared, Jeffrey Merrick, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me and that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify that under penalty of perjury under laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public: Claudia Newcomer
My Commission Expires: 07/09/2017

CLAUDIA NEWCOMER
Commission # 2028631
Notary Public - California
Orange County
My Comm. Expires Jul 9, 2017

Page 2 of 2

# SCHEDULE "A"

ALL THE FOLLOWING described real estate, Situate in the 50th Ward of the City of Philadelphia, County of Philadelphia and Commonwealth of Pennsylvania, as follows, to wit:

SITUATE on the Westerly side of 21st Street at the distance of one hundred twenty-five feet four inchesSouthwardly from the Southerly side of 73rd Avenue North (sixty feet wide) in the 50th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said 21st Street, fifteen feet four inches and extending of that width in length or depth Westwardly between line parallel with said 73rd Avenue North, one hundred eighteen feet to the middle line of a certain driveway sixteen feet wide, which leads Northwardly and Southwardly parallel with said 21st Street into and from 73rd Avenue North.

BEING Known as 7254 N. 21st Street.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveway as and for a driveway, passageway and watercourse at all times hereafter, forever, in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

UNDER AND SUBJECT to certain restrictions as of record.

#97 N1-131



Doc Id: 53002099         A
12/21/2015  03:07 PM         Page 1 of 4

This Document Recorded      Doc Id: 53002099   Doc Code: A
12/21/2015  03:07 PM   Receipt #:15-04294
Rec Fee: $220.00
Records Department, City of Philadelphia           MB

---

## COVER PAGE

### Document Type: Assignment of Mortgage/Deed of Trust

**Recording Requested By and
When Recorded Return To:
National Investors Group
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683**

**Redacted**

ASSIGNOR(S) NAME:

ASSIGNEE(S) NAME/ADDRESS:

Property Address:
7254 NORTH 21ST STREET
PHILADELPHIA, PA 19138

**Redacted**

**Prepared By**
Kirkland Financial LLC
P.O. Box 970
Goodlettsville, TN 37070
**After Recording Return To:**

    National Investors Group, LLC
    221 St. Ann Drive, Suite 1
    Mandeville, LA 70471

## Assignment of Mortgage

FOR VALUE RECEIVED, Kirkland Financial LLC, P.O. Box 970, Goodlettsville, TN 37070, its successors and assigns, hereby assigns and transfers to National Investors Group LLC, its successors and assigns, of 1125 North Causeway Blvd, Suite 2, Mandeville, LA 70471, all its right, title and interest in and to a certain Mortgage executed by Jamar Henderson, on November 6, 2001, and filed and recorded in Document No. 50360959, in the Office of the City of Philadelphia Recorder of Deeds on November 21, 2001, together with the real property therein described, and also the indebtedness described in said Mortgage, and secured thereby, the note evidencing said indebtedness having this day been transferred and assigned to the said National Investors Group LLC, together with all rights, title and interest in and to the said Mortgage, the property therein described and the indebtedness thereby secured, and the said National Investors Group LLC, is hereby entitled to all of the rights, powers, and privileges and securities vested in Kirkland Financial LLC, under and by virtue of the aforesaid Mortgage.

Property Address: 7254 North 21st Street, Philadelphia, Pennsylvania 19138
LOAN AMOUNT: $64,000.00
Legal Description is hereby attached as "Exhibit A".

Signed on the 30th day of June, 2015

                                       Kirkland Financial LLC
                                       Mark A. Davis, Vice President

State of Tennessee        }
County of Sumner          }

On the 30th day of June, 2015, before me, Jean K. Peterson, a Notary Public, personally appeared Mark A. Davis, to me known, who being duly sworn, did say that he is the Vice President of Kirkland Financial LLC, and that said instrument was signed on behalf of said corporation.

_____
Jean K. Peterson, Notary Public

My Commission Expires: 11/23/15

# SCHEDULE "A"

ALL THE FOLLOWING described real estate, Situate in the 50th Ward of the City of Philadelphia, County of Philadelphia and Commonwealth of Pennsylvania, as follows, to wit;

SITUATE on the Westerly side of 21st Street at the distance of one hundred twenty-five feet four inches Southwardly from t Southerly side of 73rd Avenue North (sixty feet wide) in the 50th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said 21st Street, fifteen feet four inches and extending of that width in length or depth Westwardly between line parallel with said 73rd Avenue North, one hundred eighteen feet to the middle line of a cert driveway sixteen feet wide, which leads Northwardly and Southwardly parallel with said 21st Street into and from 73rd Avenue North.

BEING Known as 7254 N. 21st Street.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveway as and for a driveway, passageway and watercourse at all times hereafter, forever, in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

UNDER AND SUBJECT to certain restrictions as of record.

#97 N1 -131

Case 23-12680-pmm   Doc 36-1 eRFeicoerdde/d0/2122/2f4ilaEdntiePrheidla0d2e/l2p2h/i2a4 P1A3:2162:3394   Desc
Exd6ib/i9t/20Pfagge0:383AMf155Page 1 of 3    Rec Fee: $220.00
Receipt#: 17-62003
Records Department   Doc Code: A

**Prepared By**
National Investors Group, LLC
1125 North Causeway Blvd., Suite 2,
Mandeville, LA 70471
**After Recording Return To:**

## Assignment of Mortgage                    ORIGINAL

FOR VALUE RECEIVED, National Investors Group LLC, 1125 North Causeway Blvd, Suite 2, Mandeville,
LA 70471, its successors and assigns, hereby assigns and transfers to AJX Mortgage Trust I, a
Delaware Trust, Wilmington Savings Fund Society, FSB, Trustee, its successors and assigns, of
9400 SW Beaverton-Hillsdale Highway #131, Beaverton, OR 97005, all its right, title and interest in and to
a certain Mortgage executed by Jamar Henderson, on November 6, 2001, and filed and recorded in
Document No. 50360959, in the Office of the City of Philadelphia Recorder of Deeds on November 21,
2001, together with the real property therein described, and also the indebtedness described in said
Mortgage, and secured thereby, the note evidencing said indebtedness having this day been transferred
and assigned to the said National Investors Group LLC, together with all rights, title and interest in and to
the said Mortgage, the property therein described and the indebtedness thereby secured, and the said
National Investors Group LLC, is hereby entitled to all of the rights, powers, and privileges and securities
vested in National Investors Group LLC, under and by virtue of the aforesaid Mortgage.

Property Address: 7254 North 21st Street, Philadelphia, Pennsylvania 19138

Legal Description is hereby attached as "Exhibit A".

Signed on the 18th day of April, 2017

National Investors Group, LLC
Jack J. Mendheim, Managing Member

State of Louisiana
Parish of St. Tammany

On the 18th day of April, 2017, before me, Kerrie B. Sinon , a Notary Public, personally appeared Jack J.
Mendheim, to me known, who being duly sworn, did say that he is the Managing Member of National
Investors Group LLC, and that said instrument was signed  on behalf of said corporation.

KERRIE B. SINON, ID #65480
NOTARY PUBLIC
My Commission Expires At Death



EXHIBIT" A"

LEGAL DESCRPITION

ALL THE FOLLOWING DESCRIBED REAL ESTATE, SITUATE IN THE
50TH WARD OF THE CITY OF PHILADELPHIA, COUNTY OF
PHILADELPHIA AND COMMONWEALTH OF PENNSYLVANIA, AS FOLLOWS,
TO WIT:

SITUATE ON THE WESTERLY SIDE OF 21ST STREET AT THE DISTANCE
OF ONE HUNDRED TWENTY-FIVE FEET FOUR INCHES SOUTHWARDLY
FROM THE SOUTHERLY SIDE OF 73RD AVENUE NORTH (SIXTY FEET
WIDE) IN THE 50TH WARD OF THE CITY OF PHILADELPHIA.
CONTAINING IN FRONT OR BREADTH ON THE SAID 21ST STREET,
FIFTEEN FEET FOUR INCHES AND EXTENDING OF THAT WIDTH IN
LENGTH OR DEPTH WESTWARDLY BETWEEN LINE PARALLEL WITH SAID
73RD AVENUE NORTH, ONE HUNDRED EIGHTEEN FEET TO THE MIDDLE
LINE OF A CERTAIN DRIVEWAY SIXTEEN FEET WIDE, WHICH LEADS
NORTHWARDLY AND SOUTHWARDLY PARALLEL WITH SAID 21ST STREET
INTO AND FROM 73RD AVENUE NORTH.

BEING KNOWN AS 7254 N. 21ST STREET.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY, AND
PRIVILEGE OF THE AFORESAID DRIVEWAY AS AND FOR A DRIVEWAY,
PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER, FOREVER,
IN COMMON WITH THE OWNERS, TENANTS AND OCCUPIERS OF THE
OTHER LOTS OF GROUND BOUNDING THEREON AND ENTITLED TO THE
USE THEREOF.

UNDER AND SUBJECT TO CERTAIN RESTRICTIONS OF RECORD.

97N1-131

Prepared By:
Meriah Oviatt
Collateral Team Lead
Gregory Funding LLC
9400 SW Beaverton Hillsdale Hwy Suite 131
Beaverton OR 97005  P: 503-444-4207

When recorded mail to:
Solidifi LLC
88 Silva Lane, 2nd Floor,
Middletown, RI 02842

Redacted

### ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, AJX Mortgage Trust I, a Delaware Trust, Wilmington Savings Fund Society, FSB, Trustee By Gregory Funding LLC, as Attorney in fact, whose address is 94000 SW Beaverton Hillsdale Hwy, Beaverton, OR 97005, hereby assign and transfer to U.S. Bank National Association, as Indenture Trustee on behalf of and with respect to Ajax Mortgage Loan Trust 2017-C, Mortgage-Backed Notes, whose address is 9400 SW Beaverton Hillsdale Hwy, Suite 131, Beaverton, OR 97005, all its right, title and all beneficial interest in and to a certain Mortgage and Note, executed by Jamar Henderson to Champion Mortgage, A Division of Key Bank, USA, National Association and bearing the date of November 6, 2001 and recorded on November 21, 2001, with an original loan amount of $64,000.00 in the office of the Recorder of Philadelphia County, State of PA, in Book NA at Page NA or Instrument # 50360959. Together with the bond or note or obligation described in said mortgage, and the moneys due and to grow due thereon with the interest: to have and to hold the same unto the assignee and to the successors, legal representatives, and assigns of the assignee forever.

Property Address: 7254 N 21st Street, Philadelphia, PA 19138
Legal Description: See Attached Exhibit A.
PIN # APN: 97N1-131

CERTIFICATE OF RESIDENCE
I, _____Kathy Munoz_____, do herby certify that the correct address of the within-named current Mortgagee is 94000 SW Beaverton Hillsdale Hwy, Beaverton, OR 97005.
_____
Signer Name
Agent of Current Mortgagee

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
___2-1-18___ .

AJX Mortgage Trust I, a Delaware Trust, Wilmington
Savings Fund Society, FSB, Trustee By Gregory Funding
LLC, as Attorney in fact

By: _____
Name: Mary Doyle
Title: Authorized Agent

State of *Oregon*
County of *Washington*

On 2·1·18 , before me *Brenda Kerr-Richards* Notary Public, personally appeared Mary Doyle, who is an Authorized Agent of AJX Mortgage Trust I, a Delaware Trust, Wilmington Savings Fund Society, FSB, Trustee By Gregory Funding LLC, as Attorney in fact personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they/ executed the same in he/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of *Oregon* that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Notary Public in and for said County and State
My Commission Expires: 3·2·2020    (SEAL)

OFFICIAL STAMP
BRENDA KERR-RICHARDS
NOTARY PUBLIC-OREGON
COMMISSION NO. 948108
MY COMMISSION EXPIRES MARCH 02, 2020

EXHIBIT A

ALL THE FOLLOWING described real estate, situate in the 50th Ward of the City of Philadelphia, County of Philadelphia and Commonwealth of Pennsylvania, as follows, to wit:

SITUATE on the Westerly side of 21st Street at the distance of one hundred twenty-five feet four inchesSouthwardly from the Southerly side of 73rd Avenue North (sixty feet wide) in the 50th Ward of the City of Philadelphia.

CONTAINING in from or breadth on the said 21st Street, fifteen feet four inches and extending of that width in length or depth Westwardly between line parallel with said 73rd Avenue North, one hundred eighteen feet to the middle line of a certain driveway sixteen feet wide, which leads Northwardly and Southwardly parallel with said 21st Street into and from 73rd Avenue North.

BEING Knows as 7254 N. 21st Street.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveway as and for a driveway, passageway and watercourse at all times hereafter, forever, in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

UNDER AND SUBJECT to certain restrictions as of record.

Parcel ID#: 10-1187900

From: U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE ON BEHALF OF AND WITH RESPECT TO
AJAX MORTGAGE LOAN TRUST 2017-C, MORTGAGE-BACKED NOTES
To: AJX MORTGAGE TRUST I, A DELAWARE TRUST, WILMINGTON SAVINGS FUND SOCIETY, FSB, TRUSTEE
RETURN TO:
C. R. Hall
2860 Exchange Blvd. # 100
Southlake TX 76092

### Assignment of Mortgage        Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE
TRUSTEE ON BEHALF OF AND WITH RESPECT TO AJAX MORTGAGE LOAN TRUST 2017-C,
MORTGAGE-BACKED NOTES  Gregory Funding LLC as Attorney in fact 9400 SW Beaverton Hillsdale
Hwy, Suite 131, Beaverton OR 97005 (Assignor)** by these presents does assign, and set over, without recourse, to
**AJX MORTGAGE TRUST I, A DELAWARE TRUST, WILMINGTON SAVINGS FUND SOCIETY, FSB,
TRUSTEE  9400 SW Beaverton Hillsdale Hwy, Suite 131, Beaverton OR 97005 (Assignee)** the described
mortgage with all interest, all liens, any rights due or to become due thereon, executed by **JAMAR HENDERSON**
to CHAMPION MORTGAGE, A DIVISION OF KEY BANK, USA, NATIONAL ASSOCIATION.   Said
mortgage **Dated: 11/6/2001** is recorded in the **State of PA, County of Philadelphia** on **11/21/2001, as Instrument
50360959 AMOUNT: $ 64,000.00  SEE ATTACHED EXHIBIT A**
    Property Address: 7254 NORTH 21ST STREET, Philadelphia, PA  19138-2102

TOGETHER with the bond or note or obligation described in said mortgage, and the moneys due and to grow due
thereon with the interest:  TO HAVE AND TO HOLD the same unto the Assignee and to the successors, legal
representatives, and assigns of the Assignee forever.

IN WITNESS WHEREOF, the undersigned entity has caused this instrument to be executed by its proper signatory.
Executed on:  _10/7/2020_
U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE ON BEHALF OF AND WITH RESPECT
TO AJAX MORTGAGE LOAN TRUST 2017-C, MORTGAGE-BACKED NOTES  by Gregory Funding LLC as
Attorney in fact

_____

Katie Riggs, Authorized Agent

**Redacted**

The Assignee hereby certifies that the precise address of the within named **AJX MORTGAGE TRUST I, A
DELAWARE TRUST, WILMINGTON SAVINGS FUND SOCIETY, FSB, TRUSTEE  is 9400 SW
Beaverton Hillsdale Hwy, Suite 131, Beaverton OR 97005.**

_____

PA  Philadelphia



The Power of Attorney was filed in Philadelphia County, Pennsylvania on _____ in
_____.

State of Oregon, County of Washington
On _10/14/20_, before me, the undersigned notary public personally appeared Katie Riggs who signed this
document before me and acknowledged that he/she was authorized to and did execute this instrument as Authorized
Agent of Gregory Funding LLC as Attorney in fact for U.S. BANK NATIONAL ASSOCIATION, AS
INDENTURE TRUSTEE ON BEHALF OF AND WITH RESPECT TO AJAX MORTGAGE LOAN TRUST
2017-C, MORTGAGE-BACKED NOTES and that he/she executed this instrument as the act of the entity named in
this instrument and such execution was done as the free act and deed of Gregory Funding LLC as Attorney in fact
for U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE ON BEHALF OF AND WITH
RESPECT TO AJAX MORTGAGE LOAN TRUST 2017-C, MORTGAGE-BACKED NOTES .



Notary public, _Oregon_
My commission expires: _6/5/2023_

OFFICIAL STAMP
MERIAH J OVIATT
NOTARY PUBLIC - OREGON
COMMISSION NO. 988186
MY COMMISSION EXPIRES JUNE 05, 2023



PA  Philadelphia



# Exhibit A

ALL THE FOLLOWING DESCRIBED REAL ESTATE, SITUATE IN THE
50TH WARD OF THE CITY OF PHILADELPHIA, COUNTY OF
PHILADELPHIA AND COMMONWEALTH OF PENNSYLVANIA, AS FOLLOWS,
TO WIT:

SITUATE ON THE WESTERLY SIDE OF 21ST STREET AT THE DISTANCE
OF ONE HUNDRED TWENTY-FIVE FEET FOUR INCHES SOUTHWARDLY
FROM THE SOUTHERLY SIDE OF 73RD AVENUE NORTH (SIXTY FEET
WIDE) IN THE 50TH WARD OF THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID 21ST STREET,
FIFTEEN FEET FOUR INCHES AND EXTENDING OF THAT WIDTH IN
LENGTH OR DEPTH WESTWARDLY BETWEEN LINE PARALLEL WITH SAID
73RD AVENUE NORTH, ONE HUNDRED EIGHTEEN FEET TO THE MIDDLE
LINE OF A CERTAIN DRIVEWAY SIXTEEN FEET WIDE, WHICH LEADS
NORTHWARDLY AND SOUTHWARDLY PARALLEL WITH SAID 21ST STREET
INTO AND FROM 73RD AVENUE NORTH.

BEING KNOWN AS 7254 N. 21ST STREET.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY, AND
PRIVILLEGE OF THE AFORESAID DRIVEWAY AS AND FOR A DRIVEWAY,
PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER, FOREVER,
IN COMMON WITH THE OWNERS, TENANTS AND OCCUPIERS OF THE
OTHER LOTS OF GROUND BOUNDING THEREON AND ENTITLED TO THE
USE THEREOF.

UNDER AND SUBJECT TO CERTAIN RESTRICTIONS OF RECORD.
97N1-131

 Philadelphia County, PA

**Prepared By:**
Gregory Funding LLC
13190 SW 68th Parkway, Suite 200
Tigard, Oregon 97223

**When recorded mail to:**
Solidifi Title & Closing
88 Silva Lane, Suite 210
Middletown RI 02842

**Redacted**

MERS Phone Number: 888-679-6377
MIN#: **NA**

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, AJX MORTGAGE TRUST I, A DELAWARE
TRUST, WILMINGTON SAVINGS FUND SOCIETY, FSB, TRUSTEE By Gregory Funding
LLC as Attorney in Fact, whose address is, 13190 SW 68th Parkway, Suite 200, Tigard, Oregon
97223 hereby assign and transfer to Ajax Mortgage Loan Trust 2021-B, By U.S. Bank National
Association, As Indenture Trustee whose address is 13190 SW 68th Parkway, Suite 200, Tigard,
Oregon 97223, all its right, title and all beneficial interest in and to a certain Mortgage, executed
by Jamar Henderson to Champion Mortgage, a Division of Key Bank USA, National Association
bearing the date of November 6, 2001 and recorded on November 21, 2001, with an original loan
amount of $64,000.00 in the office of the Recorder of Philadelphia County, State of PA, in Book
NA at Page NA or Instrument # 50360959.

"TOGETHER with the bond or note or obligation described in said mortgage, and the moneys
due and to grow due thereon with the interest: TO HAVE AND TO HOLD the same unto the
Assignee and to the successors, legal representatives, and assigns of the Assignee forever."

Property Address: 7254 N 21st Street, Philadelphia, PA  19138
Legal Description: See Attached Exhibit A.
PIN # APN: 101187900

CERTIFICATE OF RESIDENCE

I, _____, do hereby certify that the correct address of the within-named current Assignee is 13190 SW 68th Parkway, Suite 200, Tigard, Oregon 97223.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on __4/28/2021_____.

AJX MORTGAGE TRUST I, A DELAWARE TRUST, WILMINGTON SAVINGS FUND SOCIETY, FSB, TRUSTEE By Gregory Funding LLC as Attorney in Fact

By: _____

Name:  Katie Riggs_____

Title:   Authorized Agent_____

State of      Oregon_____    )

County of    Washington_____    )

On _4/28/2021_ before me, _____**Spencer T Sautter**_____, Notary Public, personally appeared Katie Riggs, Authorized Agent (Name, Title) of Gregory Funding LLC as Attorney in fact for AJX MORTGAGE TRUST I, A DELAWARE TRUST, WILMINGTON SAVINGS FUND SOCIETY, FSB, TRUSTEE who  proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in he/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of Oregon that the foregoing paragraph is true and correct.

WITNESS my hand and official seal:

_____
Notary Public in and for said County and State

My Commission Expires: _1·9·24_ (SEAL)

OFFICIAL STAMP
SPENCER T SAUTTER
NOTARY PUBLIC - OREGON
COMMISSION NO. 995540
MY COMMISSION EXPIRES JANUARY 09, 2024

## EXHIBIT A

ALL THE FOLLOWING DESCRIBED REAL ESTATE, SITUATE IN THE 50TH WARD OF THE CITY OF PHILADELPHIA, COUNTY OF PHILADELPHIA AND COMMONWEALTH OF PENNSYLVANIA, AS FOLLOWS, TO WIT:

SITUATE ON THE WESTERLY SIDE OF 21ST STREET AT THE DISTANCE OF ONE HUNDRED TWENTY-FIVE FEET FOUR INCHES SOUTHWARDLY FROM THE SOUTHERLY SIDE OF 73RD AVENUE NORTH (SIXTY FEET WIDE) IN THE 50TH WARD OF THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID 21ST STREET, FIFTEEN FEET FOUR INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH WESTWARDLY BETWEEN LINE PARALLEL WITH SAID 73RD AVENUE NORTH, ONE HUNDRED EIGHTEEN FEET TO THE MIDDLE LINE OF A CERTAIN DRIVEWAY SIXTEEN FEET WIDE, WHICH LEADS NORTHWARDLY AND SOUTHWARDLY PARALLEL WITH SAID 21ST STREET INTO AND FROM 73RD AVENUE NORTH.

BEING KNOWN AS 7254 N. 21ST STREET.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY, AND PRIVILLEGE OF THE AFORESAID DRIVEWAY AS AND FOR A DRIVEWAY, PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER, FOREVER, IN COMMON WITH THE OWNERS, TENANTS AND OCCUPIERS OF THE OTHER LOTS OF GROUND BOUNDING THEREON AND ENTITLED TO THE USE THEREOF.

UNDER AND SUBJECT TO CERTAIN RESTRICTIONS OF RECORD.

#97 N1-131

**EXHIBIT**

**C**

After Recording Return to:

Bayview Loan Servicing, LLC
Attn: Collateral Department
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL  33146

_____ *[Space Above This Line For Recording Data]* _____

## LOAN ADJUSTMENT AGREEMENT

This loan adjustment agreement is made and entered into as of May 29, 2013  (the "Effective Date"), by and between, Bayview Loan Servicing, LLC, ("Servicer") and  JAMAR     HENDERSON ("Borrower").

## RECITALS

A.  Servicer is the holder or servicing agent of the holder of that certain Promissory Note ("Note") dated 11/13/2001, executed by Borrower or Borrower's predecessor-in-interest in the original principal sum of  $64,000.00 .

B.  The note evidences a loan ("Loan") to Borrower or Borrower's predecessor-in-interest on 11/13/2001, in the original principal sum of  $64,000.00  along with a Deed of Trust or Mortgage ("Security Instrument") securing said Note. The Security Instrument creates a secured lien on certain real property ("Property") owned by Borrower (and is more specifically described in the Security Instrument). The Note and Security Instrument and all other loan documents related to the Loan are hereinafter collectively referred to as the "Loan Documents".

C.  Due to adverse economic circumstances, Borrower has requested Servicer to adjust the scheduled amortization of the Note to permit Borrower to meet Borrower's obligations to Servicer in full and in a timely manner. The requested adjustment will benefit Borrower, Servicer and any junior lien holder, by avoiding the possible foreclosure of the Loan by Servicer.  Accordingly, it is considered to be in the best interest of all concerned to enter this Loan Adjustment Agreement ("Agreement").

D.  Borrower hereby agrees that this Agreement may only become effective upon Borrower's completion of the Stipulation Agreement dated May 29, 2013. If Borrower successfully completes all the terms of said Stipulation, Servicer will execute this Agreement and adjust the Loan accordingly. However, said execution is subject to Borrower's addressing and clearing of any and all title issues to Servicer's satisfaction.  All payments made pursuant to the Stipulation Agreement (with the exception of the down payment mentioned below) will be credited to payments due under this Agreement.

E.  Both Borrower and Servicer hereby agree that Servicer may, in its sole discretion, record this Agreement.

## AGREEMENT

NOW, THEREFORE, Borrower and Servicer hereby agree as follows:

**1. NOTE MODIFICATIONS:**
   **(a) Outstanding Debt:**
   Borrower agrees that the unpaid principal balance due on the Note of  $52,439.42  (including credit for Stipulation Agreement downpayment), shall be increased by $22,566.63 the amount of the unpaid installments, interest, late charges, fees and costs, and, if applicable, any advances for unpaid property taxes and/or insurance premiums ("Unpaid Sums Due"), for a total unpaid principal balance due of  $75,006.05  ("New Balance"). Based on the consideration listed above, and other good and valuable consideration, Servicer agrees to defer and waive interest upon $4,952.22 ("Deferred Balance") of the New Balance until the loan matures on 06/01/2053 at which time the Deferred Balance shall be immediately due and payable as a balloon payment, as well as any outstanding amounts due under the terms of the mortgage.  In the event that the Deferred Balance is not paid timely as agreed or in the event of a default under this agreement or the loan documents, interest shall accrue on the Deferred Balance at the rate in effect on the loan immediately prior to maturity or the time of default, and will adjust thereafter according to the terms of the Note. Borrower agrees to the accuracy of the allegations contained in the above Recitals as well as to the authenticity and validity of each document referred to herein and to the validity of the unpaid sums due and the New Balance. Borrower agrees to pay the Unpaid Sums Due to Servicer and that he/she has no defenses, claims, or offsets with respect thereto. Interest and payments will accrue on the New Balance at the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement.

**(b)  New Monthly Payments, Payment Adjustments:**

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 06/01/2013 | $212.14 | $472.65 | $684.79 | 07/01/2013 | 60 |
| 6 | 3.000% | 06/01/2018 | $246.46 | Adjust Annually | Adjust Annually | 07/01/2018 | 12 |
| 7 | 4.000% | 06/01/2019 | $282.68 | Adjust Annually | Adjust Annually | 07/01/2019 | 12 |
| 8 | 5.000% | 06/01/2020 | $320.52 | Adjust Annually | Adjust Annually | 07/01/2020 | 12 |
| 9 | 6.000% | 06/01/2021 | $359.70 | Adjust Annually | Adjust Annually | 07/01/2021 | 12 |
| 10-40 | 7.000% | 06/01/2022 | $399.97 | Adjust Annually | Adjust Annually | 07/01/2022 | 372 |

Effective on 06/01/2022, Borrower's rate of interest will be 7.00% and will remain fixed for the remaining life of the loan.

**(c)  New Maturity Date:**
The maturity date will be 06/01/2053, on which date any unpaid interest and all other sums due shall be paid in full.

**2.   ESTABLISHMENT OF IMPOUND/ESCROW ACCOUNT:**
Borrower acknowledges that Servicer will establish an impound/escrow account for the collection of property taxes and insurance premiums if such account is not currently in existence. Servicer will analyze the impound/escrow account from time to time. As a result of this analysis, the escrow portion of Borrower's monthly payment may change. Borrower further acknowledges that the escrow portion of his/her monthly payment may be substantially higher than the estimate. (Note: In certain states, impound/escrow accounts do not collect for payment of taxes pertaining to Bond/Special Assessments and Irrigation/Water District).

**3.   RELEASE:**
Borrower releases Servicer, its subsidiaries, affiliates, agents, officers and employees, from any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the Loan, the servicing of the Loan, or events which lead up to or resulted in Borrower entering into this Agreement. Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution, including without limitation, California Civil Code § 1542, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

**4.   AGREEMENT NOT TO ENCUMBER:**
Borrower agrees that it will not voluntarily or involuntarily: (i) grant any interest in or option with respect to, any of the Property; or (ii) create or permit to exist any lien, security interest, or other charge or encumbrance upon or with respect to any of the Property, except for Servicer's already existing security interest and lien, or sell the Property for the benefit of itself or any party or in any manner other than that contemplated by this Agreement.

**5.   ASSIGNMENT OF LEASES AND RENTS AND RECEIVERSHIP:**
The existing Mortgage and Note shall be amended to include the following:  In the event the loan is in default and Borrowers are generating any gross income from the property by virtue of a tenancy or any other arrangement, Borrowers agree to irrevocably assign and transfer to Servicer the right title and interest of Borrower in all existing and future leases and agreements whether or not in writing, and any rents and deposits derived and collected therefrom, affecting and pertaining to the use enjoyment or occupancy of any part of the premises. Borrower consents to the entry by Servicer, Servicer's agent, or court appointed receiver or designee, to enter the premises to collect the rents and enforce the leases. Borrower further consents and waives opposition to the appointment of a court appointed Receiver in the event the loan is in default.

**6.  CHANGE IN FINANCIAL STATUS:**
In the event Borrower or any successor or assignee, shall (i) file with any bankruptcy court of competent jurisdiction or made the subject of any petition under Title 11 of the United States Code, as amended ("Bankruptcy Code"); (ii) be the subject of any order for relief issued under the Bankruptcy Code; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) have sought, or consented to, or acquiesced in, the appointment of by any court of competent jurisdiction approving a petition filed against such party for any reorganization, any trustee, receiver, conservator, or liquidator; or, (v) be the subject of any order, judgment or decree entered arrangement composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, then, subject to court approval, Servicer shall thereupon be entitled and Borrower irrevocably consents to relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or otherwise, on or against the exercise of the rights and remedies otherwise available to Servicer, including, but not limited to, immediate termination of this Agreement and filing and/ or proceeding with the foreclosure and damage action, and any other remedy as otherwise provided at law in equity, and Borrower hereby irrevocably agrees that he/she shall not object to and hereby irrevocably waives his/her rights to object to Servicer's requests for such relief. This provision is a material inducement for Servicer to enter into this Agreement.

**7.  NO OTHER CHANGES:**
Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force and effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. None of Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein. Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument whether such rights or remedies arise herein or by operation of law. Any inserted terms, changes or additions to this Agreement will immediately render it null and void. Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below Borrower has voluntarily signed this Agreement.

**8.  NO RELIANCE; CONSTRUCTION:**
Each of the parties hereto hereby declares that, prior to the execution of this Agreement, they have apprized themselves of sufficient relevant data in order that they might intelligently exercise their own judgments in deciding on the contents of this Agreement and whether to execute this Agreement. Borrower declares that his/her decision to execute this Agreement is not as a result of undue influence or duress, and not predicated on or influenced by any declarations or representations not set forth in this Agreement, by Servicer, or any other person or party or any predecessors in interest, its successors, assigns, officers, directors, employees, agents or attorneys. Each of the parties hereto hereby further acknowledges and agrees that each of them has had significant input in the development of this Agreement and this Agreement shall not therefore be construed.

**9.  NO ORAL MODIFICATION:**
This Agreement may not be amended or modified in any way except by a written instrument executed by all of the parties hereto.

**10.  SUCCESSORS AND ASSIGNS:**
This Agreement shall be binding upon and inure to the benefit of the signatories to this Agreement and each of their respective successors and assigns. The obligations of the signatories to this Agreement shall not be delegated or assigned.

**11.  ATTORNEY'S FEES, JURY TRIAL WAIVER:**
In the event that any party hereto brings suit for the collection of any damages resulting from, or the injunction of any action constituting, a breach of any terms or provisions of this Agreement, then the prevailing party shall be entitled to recover all reasonable court costs and attorney's fees, at all levels.

**12.  ADDITIONAL AGREEMENTS:**
I agree to the following:

(a) In the event Borrower defaults under this Agreement, without waiving any rights and remedies otherwise available to Servicer, Servicer shall thereupon be entitled to require and Borrower irrevocably consents to enter into either Servicer's Deed-In-Lieu or Short Sale program with respect to the Property. Under the Deed-In-Lieu program you will voluntarily transfer ownership of the Property to Servicer or Servicer's designee to satisfy the amounts due on the Loan. The Short Sale program is specifically designed to assist with the sale of the Property to avoid foreclosure, even if the sale price may not pay off the amount owed on the Loan.

(b) Borrower will execute such other documents as may be necessary to consummate the terms and conditions of such Deed-In-Lieu or Short Sale program and will cooperate fully with Servicer in obtaining any title endorsement(s), or similar title insurance product(s), and/or affidavit(s) that are necessary or required by the Servicer's procedures in connection with such program(s).

**13. PARTIAL INVALIDITY:**

If any term, covenant or condition of this Agreement or its application to any person or circumstances shall be held to be illegal, invalid or unenforceable, the remainder of this Agreement or the application of such term or provisions to other persons or circumstances shall not be affected, and each term hereof shall be legal, valid and enforceable to the fullest extent permitted by law, unless an essential purpose of this Agreement would be defeated by the loss of the illegal, unenforceable, or invalid provision. In the event of such partial invalidity, the parties shall seek in good faith to agree on replacing any such legally invalid provisions with valid provisions which, in effect, will, from an economic viewpoint, most nearly and fairly approach the effect of the invalid provision and the intent of the parties in entering into this Agreement.

**BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES HIS/HER RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE LOAN DOCUMENTS, ANY OTHER DOCUMENTS EXECUTED OR DELIVERED IN CONNECTION HEREWITH, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED OR DELIVERED IN CONJUNCTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR SERVICER ENTERING INTO THIS AGREEMENT.**

IN WITNESS WHEREOF, Servicer and Borrower have executed this Loan Adjustment Agreement,

**Borrower:**

By: _____   Date: _____
      JAMAR HENDERSON

**Servicer:**

By: _____   Date: _____
      Vice President, Bayview Loan Servicing, LLC

Asset Manager: Mark Walker

Phone Number: (855) 894-9437 Monday - Friday 9:00 am to 6:00 pm ET

Fax Number:    (786) 275-9205

05/31/2013 12:20 FAX                                                                    ☑001

10.  **NO OTHER CHANGES:**
Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations and conditions in the Loan Documents remain unmodified and in full force and effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. None of the Borrower's obligations or liabilities under the security Instrument shall be diminished or released by any provisions herein. Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument, whether such rights or remedies arise herein or by operation of law. No oral representations have been made by any party hereto which have not been incorporated into this Agreement. Any inserted terms, changes or additions to this Agreement will immediately render it null and void. Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing below Borrower has voluntarily signed this Agreement.

<span>Redacted
Redacted
Redacted
Redacted
Redacted
Redacted</span>

11.  **RELEASE:**
Borrower, by his/her signature hereon, agrees to the accuracy of the allegations contained in this Agreement, as well as to the authenticity and validity of each Loan Document referred to herein, and to the validity of the indebtedness described within those Loan Documents. Borrower further agrees and acknowledges that there are no defenses, set-offs or counterclaims to the indebtedness of Borrower pursuant to the Loan Documents. The provisions of this Agreement are a material inducement for Servicer's agreement to forbear from immediately exercising any and all of its remedies upon Borrower's default as referred herein and for entering into this Agreement.

Borrower releases Servicer, its parent, principal, holder of the indebtedness, subsidiaries, affiliates, agents, officers, and employees, from any and all claims and causes of action connected with the Loan, the servicing of the Loan, or events which lead up to or resulted in the Borrower's claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way entering into this Agreement. Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution, including without limitation, California Civil Code § 1642, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Sincerely,

*Mark Walker*

Mark Walker, Asset Manager
Bayview Loan Servicing, LLC
Phone Number:  (855) 894-9437 Monday - Friday 9:00 a.m. - 6:00 p.m., ET
Fax Number:    (786) 275-9205

ACKNOWLEDGED AND ACCEPTED:

By: _____    Date: __5-31-13__
JAMAR HENDERSON

PAYMENT REMITTANCE INFORMATION
(Always include Loan Number **Redacted** with your payment)

AM025 V 1.2 **Redacted**

05/31/2013   12:19PM

05/31/2013 12:20 FAX                                                                                    @002

**19. PARTIAL INVALIDITY:**

If any term, covenant or condition of this Agreement or its application to any person or circumstances shall be held to be illegal, invalid or unenforceable, the remainder of this Agreement or the application of such term or provisions to other persons or circumstances shall not be affected, and each term hereof shall be legal, valid and enforceable to the fullest extent permitted by law, unless an essential purpose of this Agreement would be defeated by the loss of the illegal, unenforceable, or invalid provision. In the event of such partial invalidity, the parties shall seek in good faith to agree on replacing any such legally invalid provisions with valid provisions which, in effect, will, from an economic viewpoint, most nearly and fairly approach the effect of the invalid provision and the intent of the parties in entering into this Agreement.

**BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES HIS/HER RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE LOAN DOCUMENTS, ANY OTHER DOCUMENTS EXECUTED OR DELIVERED IN CONNECTION HEREWITH, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED OR DELIVERED IN CONJUNCTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR SERVICER ENTERING INTO THIS AGREEMENT.**

IN WITNESS WHEREOF, Servicer and Borrower have executed this Loan Adjustment Agreement.

Borrower:

By: _____  Date: 5-31-13
JAMAR HENDERSON

Servicer:

By: _____  Date: _____
Vice President, Bayview Loan Servicing, LLC

Asset Manager: Mark Walker

Phone Number: (855) 894-9437 Monday - Friday 9:00 am to 6:00 pm ET

Fax Number:    (786) 275-9205

05/31/2013   12:19PM